UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 1611 COLD SPRING ROAD OPERATING COMPANY, LLC, D/B/A SWEETWOOD OF WILLIAMSTOWN RETIREMENT LIVING COMMUNITY, | ) ) ) ) ) | |
| Plaintiff and Defendant-in-Counterclaim | ) ) ) | |
| v. | ) ) | Case No. 3:21-cv-40031-KAR |
| PAMELA SKINNER, INDIVIDUALLY, AS ASSIGNEE OF ROWLAND AND DELMA SKINNER, AND AS ADMINISTRATOR OF THE ESTATE OF DELMA SKINNER, | ) ) ) ) ) ) | |
| Defendant and Plaintiff-in-Counterclaim | ) ) | |

<u>MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>
(Dkt. Nos. 87 & 90)

ROBERTSON, U.S.M.J.

Before the court are cross-motions for summary judgment filed by Plaintiff and

Defendant-in-Counterclaim, 1611 Cold Spring Road Operating Company, LLC, d/b/a

Sweetwood of Williamstown Retirement Living Community ("Sweetwood"), and Defendant and

Plaintiff-in-Counterclaim, Pamela Skinner ("Skinner"), individually, as assignee of Rowland and

Delma Skinner, and as administrator of the estate of Delma Skinner.  This case concerns the

entrance fee refund provisions in Sweetwood's applicable residency agreement ("RA").  The

parties have consented to this court's jurisdiction (Dkt. No. 16).  *See* 28 U.S.C. § 636(c); Fed. R.

Civ. P. 73.  For the reasons set forth below, Sweetwood's motion is GRANTED and Skinner's

motion is DENIED.

1

I.    FACTUAL BACKGROUND[1]

Sweetwood is a 70-unit Continuing Care Retirement Community ("CCRC") in Williamstown (PSOF ¶ 1; Def. Resp. PSOF ¶ 1; DSOF ¶ 5; Pl. Resp. DSOF ¶ 5). CCRCs are senior living communities that generally offer housing, common facilities, meals, personal care, social activities, and health-related services under a contract for continuing care that is effective for the life of the resident ("life care contract") (PSOF ¶ 4; Def. Resp. PSOF ¶ 4). CCRCs may require an entrance fee as well as a monthly maintenance fee for services (PSOF ¶ 5; Def. Resp. PSOF ¶ 5). The Massachusetts statute that governs CCRCs, Mass. Gen. Laws ch. 93, § 76, defines "entrance fee" as "an initial or deferred transfer to a provider of a sum of money or other property made or promised to be made as full or partial consideration for acceptance of a specified individual as a resident in a facility . . . ." Mass. Gen. Laws ch. 93, § 76(a). As an alternative to the entrance fee model, residents could rent units at Sweetwood without paying an entrance fee (DSOF ¶ 9; Pl. Resp. DSOF ¶ 9).

A.    The Skinners' 2001 Residency Agreement and Entrance Fee for Unit 117

When Skinner's parents, Rowland and Delma Skinner, moved to Unit 117 at Sweetwood in 2001, they signed an RA with the facility's prior owner, Northern Berkshire Community Services, Inc. ("NBCS") (PSOF ¶¶ 2, 3, 12, 14; Def. Resp. PSOF ¶¶ 2, 3, 12, 14; DSOF ¶¶ 2, 11, 19; Pl. Resp. DSOF ¶¶ 2, 11, 19). Neither party has produced a copy of the 2001 RA (DSOF ¶

_____

[1] Unless otherwise indicated, the facts are drawn from Sweetwood's Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("PSOF") (Dkt. No. 89); Skinner's Responses to Sweetwood's Statement of Material Facts and Statement of Additional Material Facts ("Def. Resp. PSOF") (Dkt. No. 104); Joint Statement of Facts as to Pamela Skinner's Motion for Summary ("DSOF") (Dkt. No. 91) and Sweetwood's Responses ("Pl. Resp. DSOF") (Dkt. No. 106). Citation to page numbers are to the numbers assigned by the court's ECF system except that deposition transcript pages are referenced by their transcript page numbers.

15; Pl. Resp. DSOF ¶ 15).  Rowland and Delma Skinner paid an initial entrance fee of $241,930 in three installments: $1,300 on December 7, 2000; $22,893 on February 12, 2001; and the balance of $217,737 on June 11, 2001 (DSOF ¶ 12; Pl. Resp. DSOF ¶ 12).

      B.    <u>The Skinners' 2004 Entrance Fee for Unit 221</u>

In August 2004, Rowland and Delma Skinner moved from Unit 117 to Unit 221 (PSOF ¶ 16; Def. Resp. PSOF ¶ 16; DSOF ¶¶ 20, 74; Pl. Resp. DSOF ¶¶ 20, 74).  They paid NBCS an additional entrance fee of $60,416 but did not execute a new RA (PSOF ¶ 16; Def. Resp. PSOF ¶ 16; DSOF ¶ 20; Pl. Resp. DSOF ¶ 20; Dkt. No. 94-8 at 8).  The combined entrance fees totaled $302,346 (DSOF ¶ 20; Pl. Resp. DSOF ¶ 20).

      C.    <u>The 2011 Residency Agreement with Sweetwood</u>

Six years after Skinner's parents moved to Unit 221, Sweetwood acquired the CCRC facility (PSOF ¶¶ 13, 17; Def. Resp. PSOF ¶¶ 13, 17; DSOF ¶¶ 22, 23, 24, 25; Pl. Resp. DSOF ¶¶ 22, 23, 24, 25).  In February 2011, Rowland and Delma Skinner and Sweetwood executed an RA for Unit 221 ("2011 RA") (PSOF ¶ 18; Def. Resp. PSOF ¶ 18; DSOF ¶ 31; Pl. Resp. DSOF ¶ 31).  The 2011 RA's relevant entrance fee refund provisions were as follows:

> **5.3.2    Termination by Resident During Lifetime:**  If Resident terminates the Agreement at any time after the Occupancy Date during Resident's lifetime, [Sweetwood] shall refund the Entrance Fee, minus an amount equal to one percent (1%) thereof for each full month the Resident occupied the Living Unit but not to exceed 10 months (i.e. 10%), within sixty (60) days after fulfillment of the following conditions:  (1) Resident has vacated and has removed all possessions from the Living Unit; (2) Resident has signed a unit release for the Living Unit in the form attached hereto; (3) Resident has paid to [Sweetwood] all outstanding fees and charges; and (4) a qualified, new resident has signed a new Residency Agreement for the Living Unit and has settled in full by paying a new Entrance Fee.  [Sweetwood] shall pay the refund of the Entrance Fee to the Resident.

> **5.3.3    Payments Pending Re-Occupancy:**  If a Resident or the Resident's Personal Representative or family would be entitled to an Entrance Fee refund under Section 5.3.2 . . . [or] Section 5.3.4 . . . , but for the fact that a

qualified, new resident has not signed a new Residency Agreement for the Living Unit and has not paid a new Entrance Fee and if, pending such re-occupancy by a new resident, [Sweetwood], with the consent of the Resident or the Resident's personal representative or family, elects to temporarily rent, lease or otherwise license the occupancy of the Living Unit under an arrangement in which a new occupant pays a monthly rent or fee for such occupancy (the "Monthly Rent") but does not pay an Entrance Fee, then, in such instance, [Sweetwood] will pay to the Resident or the Resident's personal representative or family, as applicable, the amount by which the Monthly Rent payments paid by the new occupant exceed the then Monthly Maintenance Fees for the Living Unit, and such payments will be credited against the Entrance Fee refund.

**5.4    Payment and Amount of Refund:** [Sweetwood] reserves the right, but is not obligated, to deduct from the refund of the Entrance Fee all outstanding charges due to [Sweetwood], and Resident hereby authorizes [Sweetwood] to deduct from the Entrance Fee refund all outstanding charges due to [Sweetwood]. Notwithstanding anything contained herein, at any time following the termination of this Agreement by Resident, death of the Resident or termination of this Agreement by [Sweetwood], Resident or Resident's duly appointed personal representative may either (i) negotiate with [Sweetwood] for the payment of a discounted Entrance Fee amount, in one or more installments, as shall be mutually agreed by [Sweetwood] and the Resident or Resident's duly appointed representative in their respective sole discretion or (ii) waive its rights to receive the refund described in Sections 5.3.2 [or] 5.3.4 . . . as applicable, and, in lieu thereof, request in writing (in accordance with the Notice provision of Section 7.13) payment of a refund in an amount that equals the Entrance Fee less one percent (1%) thereof for each month of occupancy (with no limitation on the number of months as otherwise provided above), in which event [Sweetwood] shall pay the Entrance Fee (less one percent (1%) per month) within the time period required by applicable law following its receipt of such waiver and request, such payment to be made to the Resident or the duly appointed personal representative of the Resident who made the request.

(PSOF ¶ 40; Def. Resp. PSOF ¶ 40; DSOF ¶¶ 89, 90; Pl. Resp. DSOF ¶¶ 89, 90; Dkt. No. 94-7 at 17-20).

Skinner and her parents reviewed the 2011 RA before Rowland and Delma Skinner signed it (PSOF ¶ 24; Def. Resp. PSOF ¶ 24; DSOF ¶ 37; Pl. Resp. DSOF ¶ 37).  The 2011 RA reflected the Skinners' entrance fee payments of $302,346 to NBCS and the payment dates (PSOF ¶ 20; Def. Resp. PSOF ¶ 20; DSOF ¶¶ 34, 41; Pl. Resp. DSOF ¶¶ 34, 41; Dkt. No. 94-7 at

6-7). Roland and Delma Skinner did not pay an additional entrance fee in 2011 (DSOF ¶ 42; Pl. Resp. DSOF ¶ 42).

      D.    <u>The Skinners' Move to Unit 119 and the 2016 Residency Agreement</u>

On February 27, 2016, in anticipation of Roland and Delma Skinner's transfer from Unit 221 to Unit 119, Skinner asked Sweetwood's Executive Director, Eileen Drumm Moore, whether any units were available to rent (DSOF ¶ 53; Pl. Resp. DSOF ¶ 53). Drumm Moore told her that lease and purchase options were available at Sweetwood and "[m]any people still prefer the entrance fee/purchase option for various reasons. Of the 4 move-ins since [she] started at Sweetwood [in December 2015], two were rentals and two were purchase" (DSOF ¶ 54; Pl. Resp. DSOF ¶ 54). Drumm Moore indicated that Roland and Delma would not be renting Unit 119 and Sweetwood would transfer their monthly maintenance fee to that unit "for the time being" (DSOF ¶ 56; Pl. Resp. DSOF ¶ 56). Drumm Moore further explained that the monthly maintenance fees charged to renters were higher than the monthly fees charged to those who paid entrance fees (DSOF ¶ 57; Def. Resp. DSOF ¶ 57). In response to Skinner's additional questions about rental units, Drumm Moore stated that not all units were available for rent and Sweetwood would first "work[] something out with the owner" before renting an apartment on which there was an entrance fee refund due (DSOF ¶¶ 59, 60; Pl. Resp. DSOF ¶¶ 59, 60). In March 2016, Drumm Moore declined to answer Skinner's question about the number of empty units that were available for rent versus the number available for purchase. She said that Sweetwood was "working on many initiatives and possibilities for the continued growth of Sweetwood . . . that will be beneficial for current residents, past residents and their estates, future residents and the Williamstown community" (DSOF ¶¶ 61, 62, 63; Pl. Resp. DSOF ¶¶ 61, 62, 63).

After Rowland and Delma Skinner transferred from Unit 221 to Unit 119 in April 2016, Skinner, acting on her parents' behalf under a durable power of attorney, negotiated another RA ("2016 RA") with Drumm Moore (PSOF ¶¶ 21, 23, 26; Def. Resp. PSOF ¶¶ 21, 23, 26; DSOF ¶¶ 44, 70; Pl. Resp. DSOF ¶¶ 44, 70). The 2016 RA was the same as the 2011 RA except that Drumm Moore and Skinner agreed on certain handwritten revisions (PSOF ¶ 27; Def. Resp. PSOF ¶ 27; DSOF ¶ 79; Pl. Resp. DSOF ¶ 79; Dkt. No. 94-7; Dkt. No. 94-8). The 2016 RA listed the $302,346 cumulative entrance fees the Skinners had paid (PSOF ¶¶ 20, 31; Def. Resp. PSOF ¶¶ 20, 31; Dkt. No. 94-8 at 8). Although Rowland and Delma Skinner were living in Unit 119 in 2016, Drumm Moore agreed to language stating that the entrance fee would be refunded upon re-occupancy of Unit 221, their former apartment (PSOF ¶ 27; Def. Resp. PSOF ¶ 27; DSOF ¶¶ 76, 77, 78, 81, 92; Pl. Resp. DSOF ¶¶ 76, 77, 78, 81, 92; Dkt. No. 94-8 at 8, 14). Skinner and Drumm Moore further agreed that the refund term in the 2011 RA would continue to apply in that the resident or her representative could elect to receive up to 90% (instead of 80%) of the original entrance fee if and when Unit 221 was re-occupied and the new resident paid the entrance fee (DSOF ¶¶ 80, 81; Pl. Resp. DSOF ¶¶ 80, 81; Dkt. No. 94-7 at 17, 18-19; Dkt. No. 94-8 at 18, 19). The 2016 RA also provided:

> This Agreement and the other writings referred to herein which form part hereof contain the entire understanding of the parties with respect to this subject matter. There are no restrictions, promises, warranties, covenants or undertakings other than expressly set forth herein or therein. This Agreement supersedes all prior agreements and understanding between the parties with respect to its subject matter. This Agreement may be amended only by a written instrument duly executed by the parties, and any condition to a party's obligation hereunder may only be waived in writing by such party.

(Dkt. No. 94-8 at 29).

Rowland, Delma, and Pamela Skinner reviewed the 2016 RA before Skinner executed it on behalf of her parents on October 27, 2016 (PSOF ¶¶ 21, 24, 25; Def. Resp. PSOF ¶¶ 21, 24,

25).  Rowland and Delma Skinner did not pay an additional entrance fee or receive a refund
when Skinner signed the 2016 RA (DSOF ¶ 87; Pl. Resp. DSOF ¶ 87).

      When Skinner executed the 2016 RA, she was told that all Sweetwood units were
available for rent or purchase (DSOF ¶ 77; Pl. Resp. DSOF ¶ 77).  She was aware that
Sweetwood was only about 50% occupied and was having difficulty selling units (PSOF ¶ 30;
Def. Resp. PSOF ¶ 30).  Although Drumm Moore represented that she thought she could sell
Unit 221 within a year, no Sweetwood representative, including Drumm Moore, guaranteed that
Unit 221 would be re-occupied by a resident who had purchased the unit and paid the entrance
fee, nor did Sweetwood or any of its agents represent that the 90% refund would be paid within
any specific time or would be paid if the conditions for payment in the 2016 RA were not
satisfied (PSOF ¶¶ 74, 89, 90, 91; Def. Resp. PSOF ¶¶ 74, 89, 90, 91; DSOF ¶ 83; Pl. Resp.
DSOF ¶ 83).

      Skinner's father died in November 2017 (PSOF ¶ 32; Def. Resp. PSOF ¶ 32).  Her
mother moved out of Sweetwood in January 2020 and paid monthly maintenance fees through
March 2020 when she fully vacated Unit 119 (PSOF ¶ 33; Def. Resp. PSOF ¶ 33; DSOF ¶ 128,
130; Pl. Resp. DSOF ¶ 128, 130).

      On or around June 16, 2020, Skinner emailed Sweetwood's executive director, Casey
Ferriter, stating that her mother had moved out in March and asking to whom she should direct
her requests for a refund of her parents' entrance fee under § 5.3.2 of the 2016 RA (DSOF ¶¶
132, 133; Pl. Resp. DSOF ¶¶ 132, 133).  Ferriter told Skinner that she would forward her inquiry
and paperwork to Sweetwood's outside counsel, Morris Bienenfeld, who was handling
Sweetwood's contract and refund claims (DSOF ¶ 134; Pl. Resp. DSOF ¶ 134).  In July 2020,

Ferriter told Skinner that Bienenfeld said that a refund could not be processed until the unit was re-occupied (DSOF ¶¶ 135, 136; Pl. Resp. DSOF ¶¶ 135, 136).

      E.     <u>Skinner's Complaint to the Attorney General and Chapter 93A Letter</u>

On July 22, 2020, Skinner filed a complaint with the Attorney General stating that she had been seeking a refund of 90% of her parents' entrance fee ($272,111.40) for four years (PSOF ¶ 56; Def. Resp. PSOF ¶ 56). Although Sweetwood sought to negotiate an agreement with Skinner in response to her complaint, Skinner did not accept any of Sweetwood's settlement offers and ended the discussions (PSOF ¶¶ 66, 67; Def. Resp. PSOF ¶¶ 66, 67).

Four months after she filed her consumer complaint, Skinner sent a Mass. Gen. Laws ch. 93A ("Chapter 93A") demand letter to Sweetwood alleging that its "failure to return the entrance fee is an unfair and deceptive business act" (PSOF ¶ 57; Def. Resp. PSOF ¶ 57; DSOF ¶ 191; Pl. Resp. DSOF ¶ 191; Dkt. No. 95-5 at 2). As unfair and deceptive practices, Skinner pointed to the uncertainty of an entrance fee refund under the 2016 RA's terms, which conditioned the refund on a new resident's occupation of the unit and payment of the residency fee. She claimed that this requirement violated the Massachusetts CCRC statute that required an entrance fee to be refunded when the resident left or died (Dkt. No. 95-5 at 3). In addition, Skinner complained that Sweetwood violated the implied covenant of good faith and fair dealing by impeding the sale of her parents' unit (Dkt. No. 95-5 at 4-5). Skinner's Chapter 93A letter demanded rescission of the 2016 RA and refund of 100% of the cumulative entrance fee the Skinners had paid (PSOF ¶¶ 58, 68; Def. Resp. PSOF ¶¶ 58, 68; DSOF ¶ 191; Pl. Resp. DSOF ¶ 191; Dkt. No. 95-5).

While claiming that Skinner's letter did not meet Chapter 93A's factual and statutory requirements and that, even if the letter complied with the statute, there was no Chapter 93A violation, Sweetwood offered to settle Skinner's claims, albeit not on her terms (Dkt. No. 88-15).

F.    Sweetwood's Census and Sales History

Joseph Straus, Sweetwood's Rule 30(b)(6) deponent, testified, as to Sweetwood's census figures, that, as of December 1, 2023, some 30 of Sweetwood's 70 units were occupied by renters or residents who had signed life care contracts and paid entrance fees (DSOF ¶ 159; Pl. Resp. DSOF ¶ 159). Sweetwood owned 53 units (DSOF ¶ 162; Pl. Resp. DSOF ¶ 162). Residents who had paid entrance fees owned the remaining 17 units (DSOF ¶ 163; Pl. Resp. DSOF ¶ 163). Of those 17 units, four units were owner-occupied, one unit was rented, and the remaining 12 were empty (DSOF ¶¶ 163, 165; Pl. Resp. DSOF ¶¶ 163, 165).

Strauss indicated that all Sweetwood's vacant units were available for sale or lease irrespective of whether they were owned by Sweetwood or a resident who had paid an entrance fee (DSOF ¶ 169; Pl. Resp. DSOF ¶ 169). Sweetwood's business practice and goal was to sell life care contracts and collect new entrance fees, but the entrance fee model was difficult to sell (PSOF ¶ 71; Def. Resp. PSOF ¶ 71; Dkt. No. 94-4 at 86). Since 2016, Sweetwood has sold one unit (DSOF ¶ 160; Pl. Resp. DSOF ¶ 160). Twenty-nine units were rented between 2020 and August 2022 (DSOF ¶ 161; Pl. Resp. DSOF ¶ 161).

Sweetwood indicated that, after the Skinners moved to Unit 119 in 2016, it renovated and upgraded Unit 221 and used it, along with other units, as a furnished model or showcase for prospective residents (PSOF ¶ 94; Def. Resp. PSOF ¶ 94; DSOF ¶¶ 178, 179; Pl. Resp. DSOF ¶¶ 178, 179). To date, a new life care resident has not purchased Unit 221 and paid an entrance fee

9

and Sweetwood has not refunded the Skinners' entrance fee (PSOF ¶ 73; Def. Resp. PSOF ¶ 73; DSOF ¶ 190; Pl. Resp. DSOF ¶ 190; Dkt. No. 94-1 ¶ 43).

Sweetwood has moved by summary judgment for a declaration that the 2016 RA complies with the requirements of Mass. Gen. Laws ch. 93, § 76(c)(4) and for judgment on Skinner's counterclaims (Dkt. No. 87), while Skinner has moved for summary judgment on her first counterclaim asserting that Sweetwood violated Chapter 93A (Dkt. No. 90).

III.    LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . .'" *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004) (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993)). A fact is material "if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (quoting *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir. 1997)). "[T]he court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Larson v. Dorland,* Civil Action No. 1:19-cv-10203-IT, 2023 WL 5985251, at *2 (D. Mass. Sept. 14, 2023) (citing *Griggs-Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990)). "'Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Ferguson v. Gen. Star Indem. Co.*, 582 F. Supp. 2d 91, 98 (D. Mass. 2008) (alteration in original) (quoting *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)).

IV.    ANALYSIS

A.    <u>Sweetwood's Motion for Summary Judgment</u>

1.    Relevant Provisions of Mass. Gen. Laws ch. 93, § 76

CCRCs are regulated by Mass. Gen. Laws ch. 93, § 76.  For purposes of Sweetwood's

request for a declaratory judgment, the pertinent statutory provision requires a CCRC's contract

with a resident to provide that:

> The entrance fee minus no more than one per cent for each month of occupancy
> shall be refunded to the resident when the resident leaves the facility or dies.

Mass. Gen. Laws ch. 93, § 76(c)(4) ("Section 76(c)(4)").  The statute further provides that "[a]ny

contract drawn in violation of … [section 76] may be rescinded by the resident and the resident

shall be entitled to a full refund of the entrance fee."  Mass. Gen. Laws ch. 93, § 76(c)(8), second

para.  A CCRC's violation of § 76 constitutes "an unfair and deceptive trade practice under the

provisions of [Chapter 93A]."  Mass. Gen. Laws ch. 93, § 76(e), final para.

2.    Section 5.4 of the 2016 Residency Agreement Complies with
§ 76(c)(4).

Sweetwood maintains that § 5.4 of the 2016 RA complies with the statute and that it is

entitled to a declaratory judgment to this effect (Dkt. No. 93 at 11-13).  For her part, Skinner

argues that §§ 5.3.2[2] and 5.4 of the 2016 RA violate § 76(c)(4) (Dkt. No. 92 at 17-22; Dkt. No.

102 at 2-7).

The 2016 RA offered Skinner several refund options in §§ 5.3.2 and 5.4.  Section 5.4

stated, in pertinent part:

> **Payment and Amount of Refund:**  Notwithstanding anything contained herein,
> at any time following the termination of this Agreement by Resident, death of the

---

[2] Skinner's reference to § 5.2.3 of the 2016 RA appears to be a typographical error (Dkt. No. 102 at 3).  That section of the 2016 RA addressed the payment of the monthly maintenance fee which is not at issue.

> Resident or termination of this Agreement by [Sweetwood], Resident or
> Resident's duly appointed personal representative may either (i) negotiate with
> [Sweetwood] for the payment of a discounted Entrance Fee amount, in one or
> more installments, as shall be mutually agreed by [Sweetwood] and the Resident
> or Resident's duly appointed representative in their respective sole discretion or
> (ii) waive its rights to receive the refund described in Sections 5.3.2 [or] 5.3.4 . . .
> as applicable, and, in lieu thereof, request in writing (in accordance with the
> Notice provision of Section 7.13) payment of a refund in an amount that equals
> the Entrance Fee less one percent (1%) thereof for each month of occupancy (with
> no limitation on the number of months as otherwise provided above), in which
> event [Sweetwood] shall pay the Entrance Fee (less one percent (1%) per month)
> within the time period required by applicable law following its receipt of such
> waiver and request, such payment to be made to the Resident or the duly
> appointed personal representative of the Resident who made the request.

(PSOF ¶ 40; Def. Resp. PSOF ¶ 40; DSOF ¶ 90; Pl. Resp. DSOF ¶ 90; Dkt. No. 94-8 at 20).  In

Skinner's case, she was not entitled to a refund pursuant to § 5.4 because, given how long her

parents resided at Sweetwood, the facility did not owe any refund under that provision (PSOF ¶¶

36, 37, 38; Def. Resp. PSOF ¶¶ 36, 37, 38).  Sweetwood offered Skinner alternative refund

options in other sections of the 2016 RA, including in § 5.3.2.  That provision required

Sweetwood to refund up to 90% of the entrance fee upon the occurrence of four conditions: (1)

the resident or her personal representative vacated and removed all of the resident's possessions

from the living unit; (2) the resident or her personal representative signed a unit release; (3) the

resident or her personal representative paid all outstanding fees and charges; and (4) a qualified

new resident signed a new RA for the prior resident's unit and paid a new entrance fee (Dkt. No.

94-8 at 18).

　　　To the extent Skinner argues that § 5.4 is ambiguous, whether a contract is ambiguous is

a question of law for the court.  *See Eigerman v. Putnam Invs., Inc.*, 877 N.E.2d 1258, 1263

(Mass. 2007) (citing *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1083 (1st Cir. 1989)).

"Contract language is ambiguous 'where the phraseology can support a reasonable difference of

opinion as to the meaning of the words employed and the obligations undertaken.'" *President &*

*Fellows of Harvard Coll. v. PECO Energy Co.,* 787 N.E.2d 595, 601 (Mass. App. Ct. 2003) (quoting *Suffolk Constr. Co. v. Lanco Scaffolding Co.,* 716 N.E.2d 130, 133 (Mass. App. Ct. 1999)).

Section 76(c)(4) required Sweetwood to offer Skinner a refund in an amount equal to the entrance fee remaining after the amount of the cumulative entrance fee was reduced by 1% for each month Rowland and Delmar Skinner resided at Sweetwood. *See* Mass. Gen. Laws ch. 93, § 76(c)(4). Section 5.4(ii) of the 2016 RA tracked the statutory language. It provided that Sweetwood "shall" pay "a refund in an amount that equals the Entrance Fee less one percent (1%) thereof for each month of occupancy . . . ." (Dkt. No. 94-8 at 20). That provision was unambiguous as to Sweetwood's refund obligation: if a resident or representative requested the statutory refund, and any refund was due, Sweetwood was required to pay it. Contrary to Skinner's contention, Chapter 76 does not obligate a CCRC to inform contracting residents that the Section 76(c)(4) refund is required by law (Dkt. No. 102 at 5-6). Section 5.4(ii) is unambiguous as to the § 76(c)(4) refund obligation and must be interpreted according to its plain terms. *See Suffolk Constr. Co.,* 716 N.E.2d at 133 (citing *Fairfield 274–278 Clarendon Tr. v. Dwek,* 970 F.2d 990, 993 (1st Cir. 1992); *Freelander v. G. & K. Realty Corp.,* 258 N.E.2d 786, 788 (Mass. 1970)). Those plain terms comply with the statutory directive in § 76(c)(4).

Skinner further argues that § 5.4(ii) of the 2016 RA violates Chapter 76 because the payment of the statutory refund was conditioned on a waiver of other refund options, such as the option in § 5.3.2 of the 2016 RA, and a written request for the statutory refund (Dkt. No. 102 at 6; Dkt. No. 94-8 at 20). Statutory construction is a question of law. *See Commonwealth v. Cintolo,* 613 N.E.2d 509, 510 (Mass. 1993). Although the plain language of § 76(c)(4) indicates the Legislature's intent to ensure that the statutory refund amount was available, *see Osborne-*

*Trussell v. Children's Hosp. Corp.,* 172 N.E.3d 737, 745 (Mass. 2021), the Legislature did not

dictate specific contract language to accomplish that goal.  *See* Mass. Gen. Laws ch. 93, § 76(c).

The waiver and notice provisions in § 5.4(ii) of the 2016 RA imposed a minimal burden on

Skinner and were a reasonable means of documenting a request for the statutory refund and

willingness to forego the potentially more favorable refund in § 5.3.2.  In contrast to § 5.3.2's

conditions precedent, § 5.4(ii)'s waiver and notice requirements did not depend on the acts of a

third party over whom Skinner had no control and they did not affect the availability or the

amount of the refund required by statute.  *See Nussenbaum v. Chambers & Chambers*, *Inc.,* 77

N.E.2d 780, 782 (Mass. 1948) ("Courts do not go out of their way to discover some illegal

element in a contract or to impose hardship upon the parties beyond that which is necessary to

uphold the policy of the law.").

      Skinner's contention that Sweetwood cannot rely on the unambiguous § 76(c)(4) refund

provision in the 2016 RA because Sweetwood cannot show that the 2001 RA signed by Rowland

and Delma Skinner contained the required statutory refund provision is unpersuasive (Dkt. No.

92 at 7, 21; Dkt. No. 102 at 7).  The 2011 and 2016 RAs signed by or on behalf of Rowland and

Delma Skinner acknowledged the dates and amounts of their entrance fee payments (Dkt. No.

94-7 at 6-7; Dkt. No. 94-8 at 8), and the 2016 RA, signed by Skinner, expressly provided that it

"supersedes all prior agreements and understanding between the parties with respect to its

subject matter" (Dkt. No. 94-8 at 29).  Skinner has not pointed to any authority to support her

contention that Sweetwood must show that the 2001 RA complied with the statute and the court

is aware of none.  Indeed, this contention appears inconsistent with the decision in *Krens v. 1611

Cold Spring Rd. Operating Co.*, No. 13-P-381, 2014 WL 470419 (Mass. App. Ct. Feb. 7, 2014)

(unpublished).  In the *Krens* case, the Massachusetts Appeals Court held, with respect to the

contention that a refund provision in a January 2005 RA the plaintiff signed when NBCS owned the facility violated § 76(c)(4), that the plaintiff could not "recover 93A damages from Cold Spring for [allegedly unfair and deceptive] acts committed by NBCS, including a provision in the agreement that [was] contrary to the statute." *Id.* at *2.

Skinner fares no better with her argument that "she did not know that [§] 5.4 was a relevant provision" because the 2016 RA was lengthy and she focused on the 90% refund "promised" by § 5.3.2 (Dkt. No. 102 at 5-6). "[I]n the absence of fraud [which is not alleged here], one who signs a written agreement is bound by its terms whether [one] reads and understands it or not . . . ." *Cohen v. Santoianni*, 112 N.E.2d 267, 271 (Mass. 1953); *see also Bose Corp. v. Ejaz,* 732 F.3d 17, 22 (1st Cir. 2013) (same); *Rivera v. Stetson*, 218 N.E.3d 55, 59 (Mass. App. Ct. 2023) (same). Skinner negotiated changes to the 2016 RA with Drumm Moore and she and her parents reviewed the 2016 RA before she executed it on her parents' behalf (PSOF ¶¶ 23, 24, 25, 26, 27; Def. Resp. PSOF ¶¶ 23, 24, 25, 26, 27). By signing the 2016 RA, she acknowledged that she "read and understood it" and "had an opportunity to review [it] with an attorney, financial advisor or other representative of her choice" (Dkt. No. 94-8 at 31).

3.    Section 5.3.2 of the 2016 Residency Agreement Did Not Violate the CCRC Statute

Skinner argues – confusingly – that the 2016 RA fails to comply with the statute in that it "does not allow for unconditional payment of the statutory refund" because the refund payable under § 5.3.2 was conditioned on the occurrence of conditions precedent and Skinner "could end up with no refund at all" (Dkt. No. 92 at 19-20; Dkt. No. 102 at 3-4). The short answer to this contention is that the 2016 RA provided for an unconditional payment of the statutory refund and the statute does not provide for any entrance fee refund at all when residents live in a CCRC for as long as Skinner's parents lived at Sweetwood. Presumably for this reason, Skinner never

requested the statutorily mandated refund.  Instead, she sought to recover a refund of 90% of the entrance fee under § 5.3.2 of the 2016 RA.  That provision unambiguously made any refund to Skinner contingent on the occurrence of four identified conditions (Dkt. No. 94-8 at 18).

Skinner acknowledges that the statute did not prevent the parties from negotiating refund provisions that were more favorable to the residents than the statutory refund (Dkt. No. 92 at 19-20).  *See Gordon v. Safety Ins. Co.,* 632 N.E.2d 1187, 1189 (Mass. 1994) ("Benefits above [the required statutory] amount were provided strictly at [the insurer's] option and, accordingly, are a matter of contract and not a statutory mandate.").  The refund potentially available under § 5.3.2 of the 2016 RA, which was payable only if specific conditions were satisfied, did not interfere with the residents' right to the statutory refund because the contractual refund terms were separate and distinct from the statutory refund provision in § 5.4(ii).  It is undisputed that the conditions for payment of the § 5.3.2 refund were not satisfied.

> 4.    Sweetwood is entitled to declaratory relief.

Sweetwood asks the court to declare that the 2016 RA complied with § 76(c)(4); that Sweetwood had no obligation to refund any portion of the entrance fee paid by Rowland and Delma Skinner; and that Sweetwood is not liable to Skinner for damages arising from a violation of the 2016 RA (Compl. at 6).  *See DeNovellis v. Shalala,* 124 F.3d 298, 313–14 (1st Cir. 1997) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995)).  If Sweetwood failed to comply with § 76(c)(4), Sweetwood would be required to refund the cumulative entrance fee to Skinner because Skinner has sought to rescind the contract.  *See* Mass. Gen. Laws ch. 93, § 76(c)(8), second para.  This is the sort of question for which declaratory judgment is appropriate.  *See Oneida Tribe of Indians of Wis. v. Wisconsin*, 951 F.2d 757, 760 (7th Cir. 1991) (relief under the Declaratory Judgment Act is appropriate to obtain judicial interpretation of a statute); *Gardner v.*

*Larkin*, C.A. No. 19-139JJM, 2019 WL 5964751, at *6 (D.R.I. Nov. 13, 2019) ("Declaratory relief exists to enable a party to a contract to determine his or her rights and liabilities before incurring costs and risks the party would not incur if the party's view of his or her rights and liabilities under the contract is erroneous.").  Because the 2016 RA's refund terms comply with § 76(c)(4) as a matter of law, Sweetwood is entitled to summary judgment and a declaration that the 2016 RA complies with the statute, that Skinner is not entitled to the statutory refund, and that Sweetwood is not liable for damages based on a violation of the refund provisions of the 2016 RA.

      B.    <u>Skinner's Motion for Summary Judgment and Sweetwood's Cross-Motion</u>

      Skinner claims that she is entitled to summary judgment because Sweetwood violated Chapter 93A by failing to comply with the Attorney General's regulations, 940 Mass. Code Regs. § 3.13(4), governing consumer refunds and this failure constitutes a *per se* violation of Chapter 93A, and that Sweetwood otherwise engaged in unfair or deceptive acts or practices that interfered with the refund of the entrance fee (Dkt. No. 92).  For its part, Sweetwood argues that it is entitled to summary judgment on Skinner's counterclaims in that she waived any claim based on the Attorney General's regulations and that, even if she did not waive such a claim, there is no *per se* violation because the regulation does not apply to CCRC contracts, and the 2016 RA clearly notified Skinner of her refund rights (Dkt. No. 87; Dkt. No. 107 at 3-11). Further, Sweetwood contends that, based on undisputed facts, its conduct as to a refund under the 2016 RA was not unfair or deceptive as a matter of law (Dkt. No. 107 at 11-20).

      1.    Violation of 940 Mass. Code Regs. § 3.13(4)

      a.    By failing to raise a claim of violation of 940 Mass. Code Regs. § 3.13(4) in her Chapter 93A demand letter, Skinner waived any such claim.

"Pursuant to chapter 93A, a claimant seeking relief must send a written demand 'reasonably describing the unfair or deceptive act or practice relied upon' by the claimant." *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 205 (1st Cir. 2004) (quoting Mass. Gen. Laws ch. 93A, § 9(3)).  Demand letters must "'set out specifically any activities . . . as to which [claimants] seek relief.  Separate relief on actions not so mentioned is foreclosed as a matter of law.'" *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018) (quoting *Passatempo v. McMenimen*, 960 N.E.2d 275, 293 (Mass. 2012)).[3]

Skinner's demand letter (Dkt. No. 95-5) asserted two claims.  First, misstating the refund provisions in the 2016 RA and the relevant sections of the statute, Skinner claimed that the refund provisions in the 2016 RA were in violation of §76(c)(4), and, on this basis, she demanded the right to rescind the contract (Dkt. No. 95-5 at 3-4).  Second, she claimed that the 2016 RA included a contractual condition that the unit be re-sold prior to refund, and she contended that Sweetwood's alleged failure to make adequate re-sale efforts was an unfair and deceptive practice (Dkt. No. 95-5 at 4-5).  Neither of these contentions resembles the argument,

---

[3] Subsection (3) of § 9 of Chapter 93A sets out the Chapter 93A presentment requirement.  That subsection provides, in part, that "[t]he demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim . . . ."  Skinner's Chapter 93A claim is asserted as a counterclaim.  In opposition to Skinner's summary judgment motion, Sweetwood argued in no uncertain terms that Skinner's contentions regarding the Attorney General's consumer regulation were waived because they were not raised in her AGO consumer complaint, her two Chapter 93A presentment letters, in written discovery, or at her deposition (Dkt. No. 107 at 10).  The court granted the parties leave to file reply briefs (Dkt. No. 65).  Plaintiff did so (Dkt. No. 110).  Nowhere in Skinner's reply brief did she argue that the Chapter 93A presentment requirement did not apply to her counterclaim.  To the contrary, she argued that her Chapter 93A letter sufficiently alerted Sweetwood of the basis of her Chapter 93A claims (Dkt. No. 110 at 1-3).  Accordingly, Skinner has waived any argument that Chapter 93A's presentment requirement did not apply to her Chapter 93A counterclaim.  *See, e.g., Burke v. Walsh*, Civil Action No. 23-11798-MGM, 2024 WL 3548759, at *6 (D. Mass. June 5, 2024) (finding the defendants' qualified immunity arguments waived where they were not sufficiently developed; collecting cases).

advanced in support of Skinner's motion for summary judgment, that the 2016 RA's refund provisions failed "to clearly and conspicuously disclose . . . the exact nature and extent of the seller's refund, return, or cancellation policy" in violation of 940 Mass. Code Regs. § 3.13(4)(a) (Dkt. No. 92 at 3).

Although Skinner's letter was not required to state "every specific statutory or regulatory violation alleged," *Casavant v. Norwegian Cruise Line Ltd.*, 952 N.E.2d 908, 913 (Mass. 2011), her failure to identify violations of the Attorney General's regulations governing refund provisions as a basis of her Chapter 93A deprived Sweetwood of the opportunity to consider the viability of that theory for purposes of determining "'if the requested relief should be granted or denied' and . . . mak[ing] 'a reasonable tender of settlement.'" *Spring v. Geriatric Auth. of Holyoke,* 475 N.E.2d 727, 736 (Mass. 1985) (quoting *York v. Sullivan,* 338 N.E.2d 341, 346 (Mass. 1975)). In similar situations, other sessions of this court have declined to consider a party's Chapter 93A claims. *See Aja v. Ocwen Loan Servicing, LLC,* Civil Action No. 16-10007-FDS, 2017 WL 5900961, at *7 (D. Mass. Nov. 30, 2017) (the court declined to consider plaintiff's Chapter 93A claims on their merits where the theories of liability were not raised in the complaint or demand letter but were raised for the first time in her opposition to defendant's summary judgment motion); *DaSilva v. U.S. Bank, N.A.,* 885 F. Supp. 2d 500, 506 (D. Mass. 2012) (plaintiff could not proceed with a Chapter 93A claim based on a Home Affordable Mortgage Program ("HAMP") violation because the demand letter did not identify the violation or mention HAMP). *Compare Casavant,* 952 N.E.2d at 913-14 (defendant received fair notice of plaintiff's claim of a violation of a regulation that was not included in his demand letter where defendant's response showed that it was aware of the regulation that required disclosure of its refund policy and its failure to comply). Because Skinner's letter failed to give Sweetwood

notice of the alleged violation of 940 Mass. Code Regs. § 3.13(4)(a), the claim is waived.  *See*

*Neuhoff*, 370 F.3d at 205-06 (failure to assert a claim concerning deceptive or false promises in

the demand letter that raised the defendant's sale of defective windows waived the claim) (citing

*Entrialgo v. Twin City Dodge, Inc.,* 333 N.E.2d 202, 204 (Mass. 1975) (failure to complain of a

specific violation of Chapter 93A is a bar to suit); *Bressel v. Jolicoeur,* 609 N.E.2d 94, 98 (Mass.

App. Ct. 1993) (a related claim not mentioned in the demand letter was waived).

> b.    940 Mass. Code Regs. § 3.13(4) does not apply to the 2016 RA.

"'[T]he boundaries of what may qualify for consideration as a 93A violation is a question

of law.'"  *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 15 (1st Cir. 2021) (quoting *Incase,*

*Inc. v. Timex Corp.*, 488 F.3d 46, 57 (1st Cir. 2007)).  Even if Skinner's claim of a *per se*

Chapter 93A violation based on the Attorney General's regulations was not waived, 940 Mass.

Code Regs. § 3.13(4), which is in the regulations that address pricing, refund, return, and

cancellation privileges, does not apply, at least to the portions of the 2016 RA on which Skinner

relies to claim relief.  As to refund policies, subsection (4) states:

> It is unfair and deceptive trade practice:
>
> (a) To fail to clearly and conspicuously disclose to a buyer, prior to the
> consummation of a transaction, the exact nature and extent of the seller's refund,
> return, or cancellation policy;
>
> (b) To misrepresent the nature and terms of the seller's refund, return, or
> cancellation policy;
>
> (c) To fail to perform any promises made to a buyer in connection with the
> refund, return, or cancellation privileges.

940 Mass. Code Regs. § 3.13(4).  The regulations define "clear and conspicuous disclosure" as

follows:

> Without limiting any other provisions of law, disclosures required by these
> regulations shall be of such size or color contrast and so placed as to be readily

20

> noticeable to purchasers or prospective purchasers reading advertising, sales
> promotional literature, or invoices containing same, or reading any representation
> as to content on the container in which the product is packed, or inspecting a
> product before installation or with a minimum of disassembly after installation.  A
> term is conspicuous when it is so written that a person against whom it is to
> operate ought to have noticed it.  Language in the body of a form is
> "conspicuous" if it is in larger or contrasting type or color.

940 Mass. Code Regs. § 3.01.  "[W]hen regulations establish *per se* unfair or deceptive acts or practices, plaintiffs need not make an additional showing of unfairness or deceptiveness aside from evidence of the violation itself."  *Hebert v. Vantage Travel Serv., Inc.*, Case No. 17-cv-10922-DJC, 2021 WL 2516076, at *2 (D. Mass. June 18, 2021).  Nonetheless, "[w]here … regulations set out that an act or practice is *per se* unfair or deceptive . . . a plaintiff still must satisfy other elements of the Chapter 93A claim (e.g., causation and injury)."  *Douglas v. EF Educ. First Int'l, Ltd.*, Case No. 20-cv-11740-DJC, 2021 WL 4311822, at *6 (D. Mass. Sept. 22, 2021).

Skinner's claim, had it not been waived, would fail because the regulation at 940 Mass. Code Regs. § 3.13 describes unfair or deceptive pricing and refund policies or practices of retail sellers of consumer goods or services.  *See Purity Supreme, Inc. v. Attorney Gen.,* 407 N.E.2d 297, 299 (Mass. 1980) ("The regulation, which is sometimes referred to as the Item Price Regulation, . . . requires merchants to affix the sale price to each item of consumer goods."); *see also* THOMAS B. MERRITT, CONSUMER LAW, 35 MASS. PRACTICE SERIES, § 3:60 (4th ed. 2021) (the refund regulation, 940 Mass. Code Regs. § 3.13(4), applies to "retail sellers" and is designed to protect consumers of retail goods and services).  Sweetwood is not a retail seller of consumer goods or services.  Rather, Sweetwood granted Roland and Delma Skinner a "revocable license to occupy" their living unit subject to the terms of the 2016 RA (Dkt. No. 94-8 at 8).  Plaintiff has pointed to no state or federal authority holding that 940 Mass. Code Regs. §

21

3.13(4) applies to the refund provisions required to be included in a CCRC RA, and the court is aware of none. A federal court sitting in diversity "must 'take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts.'" *CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 58 (1st Cir. 2020) (quoting *Markham v. Fay*, 74 F.3d 1347, 1356 (1st Cir. 1996)).

Moreover, as the First Circuit has observed, "Massachusetts courts have recognized that violations of a limited number of statutes automatically give rise to liability under Chapter 93A. . . . In the instances where the Massachusetts appellate courts have found per se Chapter 93A liability based on a statutory violation, such conclusion . . . was grounded on explicit statutory language." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 117 (1st Cir. 2014) (citations omitted); *Klairmont v. Gainsboro Rest., Inc.*, 987 N.E.2d 1247, 1254-55 (Mass. 2013) (stating that the fact that a building code provision might qualify as a regulation meant for the protection of the health, safety, or welfare "does not mean that a violation of the building code necessarily qualifies as a violation of c. 93A, § 2"). Section 76 of Chapter 93, the statute that regulates CCRCs, has explicit language addressing Chapter 93A liability. The statute provides that, in addition to the recission remedy in subsection (c), "violations of the provisions of this section by a facility shall constitute an unfair and deceptive trade practice under the provisions of chapter ninety-three A." Mass. Gen. Laws ch. 93, § 76(e), final para. Mass. Gen. Laws ch. 93, § 76 is a comprehensive statute that "'expressly or implicitly cover[s] the field in a way which precludes further remediation by regulation under G.L. c. 93A.'" *Darviris v. Petros*, 812 N.E.2d 1188, 1195 (Mass. 2004) (quoting *Am. Shooting Sports Council, Inc. v. Attorney Gen.*, 711 N.E.2d 899, 906 (Mass. 1999)). By Section 76's plain terms and as a matter of law, to show a *per se* violation of Chapter 93A, Skinner would have to show a violation of the

22

provisions of Section 76. To the extent Skinner claims that the refund provisions as they appear

in the 2016 RA are *per se* in violation of Chapter 93A because they did not comply with the

Attorney General's regulations at 940 Mass. Code Regs. § 3.13, she has not alleged a violation of

any of the provisions of Chapter 76 and she has failed to establish a *per se* violation of Chapter

93A.

        2.   Unfair or Deceptive Acts Under Chapter 93A.[4]

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce . . . ." Mass. Gen. Laws ch. 93A, § 2(a). "To

prevail on a Chapter 93A claim, the plaintiff: 'must prove that a person who is engaged in trade

or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss

of money or property as a result.'" *Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 2d

100, 102 (D. Mass. 2011) (alteration in original) (quoting *Morris v. BAC Home Loans Servicing,*

*L.P.,* 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (citations omitted)). "[A] practice or act will be

unfair . . . if it is (1) within the penumbra of a common law, statutory, or other established

concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes

substantial injury to [consumers,] competitors or other business people." *Heller Fin. v. Ins. Co.*

*of N. Am.*, 573 N.E.2d 8, 12-13 (Mass. 1991) (citing *Datacom Interface, Inc. v. Computerworld,*

*Inc.,* 489 N.E.2d 185, 196 (Mass. 1986) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*,

---

[4] Skinner also asserted as a separate counterclaim an allegation that Sweetwood violated the covenant of good faith and fair dealing (Dkt. No. 119 ¶¶ 81-84). However, because Sweetwood has moved for summary judgment on both of Skinner's counterclaims and Skinner has not addressed her claim for a breach of the implied duty of good faith and fair dealing, it is waived. *See Estrada v. Rhode Island,* C.A. No. 07-10ML, 2008 WL 11385631, at *5 (D.R.I. Dec. 30, 2008) (failure to develop a claim waives an issue) (citing *Cody v. United States*, 249 F.3d 47, 53 n.6 (1st Cir. 2001)). Even if it was not waived, the claim would fail for the same reasons that Skinner's Chapter 93A claim fails.

321 N.E.2d 915, 917 (Mass. 1975)).  "'Chapter 93A liability is decided case-by-case, and

Massachusetts courts have consistently emphasized the "fact-specific nature of the inquiry."'"

*Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 32 (D. Mass. 2019) (quoting *Arthur D. Little,*

*Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998)).

       While not explicitly stated in Skinner's Chapter 93A presentment letter, it is possible to

tease out a claim in the presentment letter that the refund provisions in the 2016 RA were

confusing and that this failure to explain Sweetwood's refund policies was unfair and deceptive

conduct that caused her injury (Dkt No. 95-5 at 2), a contention that she develops at greater

length in her memorandum in support of her summary judgment motion (Dkt. No. 92 at 5, 19-21,

23-24).  The undisputed facts of record defeat this claim.  First, the "exact nature" of

Sweetwood's refund policies, insofar as those policies applied to Skinner's situation, are clearly

set forth in §§ 5.3 and 5.4 of the 2016 RA that Skinner negotiated and signed (Dkt. No. 94-8 at

17-20).  Second, Skinner recites a litany of alleged misrepresentations and omissions from the

refund policy and claims that she would not have executed the 2016 RA if Sweetwood's policy

had disclosed that information because she would have realized that Sweetwood would not

refund her parents' entrance fee (Dkt. No. 92 at 12-16).  The 2016 RA clearly set forth the

relevant refund policies, including that there were conditions to her entitlement to a refund

pursuant to § 5.3.2, and, when Skinner signed the 2016 RA, she acknowledged that the

agreement was the parties' entire understanding with respect to the subject matter of the

agreement (Dkt. No. 94-8 at 18-20, 29).  Third, Skinner now alleges that § 5.3.2 of the 2016 RA

included an implied promise that Sweetwood would facilitate the sale of Unit 221 (Dkt. No. 92 at

16-17).  However, there is no dispute that Sweetwood did not guarantee a sale (PSOF ¶¶ 74, 89,

90, 91; Def. Resp. PSOF ¶¶ 74, 89, 90, 91).  Nor, given the undisputed evidence that Sweetwood

has sold only one unit since 2016 (DSOF ¶ 160; Pl Resp. DSOF ¶ 160), is there any evidence to support the claim that Sweetwood gave preference to selling units it owned over selling units owned by individuals like Skinner who were owed a refund.

      3.  Sweetwood did not engage in unfair or deceptive acts or practices that indefinitely delayed payment of the contractual refund.

    Contrary to Skinner's claim, Sweetwood's conduct surrounding the 2016 RA was not unfair, deceptive, and misleading (Dkt. No. 92 at 23-24). When Skinner signed the 2016 RA, she knew, or should have known, that there was a risk that the conditions for payment of the contractual refund might not be satisfied. *See Swanson v. Bankers Life Co.,* 450 N.E.2d 577, 580 (Mass. 1983). There is no dispute that the payment of the contractual refund was conditioned on the sale of Unit 221 to a new life care resident and payment of the entrance fee (PSOF ¶ 65; Def. Resp. PSOF ¶ 65; Dkt. No. 95-1 at 105). Before her parents signed the 2011 RA, Skinner reviewed that contract, which clearly stated those conditions precedent for payment of the entrance fee refund (PSOF ¶ 24; Def. Resp. PSOF ¶ 24; Dkt. No. 94-7 at 17; Dkt. No. 94-8 at 18; Dkt. No. 95-1 at 49).

    After Roland and Delma moved from Unit 221 to Unit 119 in April 2016, Skinner and Drumm Moore negotiated changes to some of the RA terms including those that addressed the entrance fee refund (PSOF ¶ 27; Def. Resp. PSOF ¶ 27; DSOF ¶ 79; Pl. Resp. DSOF ¶ 79; Dkt. No. 94-8 at 8, 9, 10, 13, 14, 18, 19, 20). The parties added a provision stating that the entrance fee would be refunded "upon the re-occupancy of [Unit] 221" so that the Skinners' entrance fee refund might be available to pay their expenses while they lived in Unit 119 (DSOF ¶ 81; Pl. Resp. DSOF ¶ 81; Dkt. No. 88-9 at 61-62; Dkt. No. 94-8 at 8, 14; Dkt. No. 95-1 at 51). Sweetwood agreed to increase the refund amount from 80% to 90% of the original entrance fee (DSOF ¶ 80; Pl. Resp. DSOF ¶ 80; Dkt. No. 94-8 at 18). There is no dispute that Skinner could

have consulted with an attorney or financial advisor before she signed the 2016 RA (Dkt. No. 88-9 at 90-91; Dkt. No. 94-8 at 31). When Skinner executed the contract, she knew that Sweetwood was only about fifty percent occupied and was having difficulty selling units (PSOF ¶ 30; Def. Resp. PSOF ¶ 30; Dkt. No. 95-1 at 109, 110), but she did not negotiate a change in the provision that made the 90% refund conditional on re-sale or a time limit for the payment (PSOF ¶ 28; Def. Resp. PSOF ¶ 28; Dkt. No. 94-1 ¶ 48; Dkt. No. 94-8 at 18; Dkt. No. 95-1 at 111).

Skinner blames Sweetwood's failure to refund her parents' entrance fee on its decision to rent units and claims that, based on the information Drumm Moore provided in February and March 2016, she was not informed that all units, including Unit 221, were available for rent when she signed the 2016 RA in October (Dkt. No. 92 at 11, 12, 14, 15, 24). But § 5.3.3 of the 2011 RA and the 2016 RA provided that Sweetwood could obtain an entrance fee owner's consent to rent his unit pending the sale to a new resident and that Sweetwood would pay the owner the difference between the monthly rent and the monthly maintenance fees for the unit and credit that amount against the owner's entrance fee refund (Dkt. No. 94-7 at 18; Dkt. No. 94-8 at 18-19).[5]

While Skinner alleges that the contract was "overall unclear, confusing, and subject to multiple interpretations" (Dkt. No. 92 at 23-24), "Chapter 93A does not apply to a situation such as this, where the parties are merely engaged in a good faith dispute regarding the meaning of a

---

[5] Skinner also claims that Sweetwood failed to disclose the harm to its reputation caused by offering limited refunds to former residents and withheld information that "the entrance fee amounts charged for any given unit were fluid and could decrease over time" before she signed the 2016 RA (Dkt. No. 92 at 12-13). The claim of damage to reputation is based on hearsay to which Sweetwood objects (DSOF ¶¶ 151, 152; Pl. Resp. DSOF ¶¶ 151, 152). *See* Fed. R. Civ. P. 56(c)(2) (requiring the material relied on to support or dispute a fact in connection with a motion for summary judgment be admissible in evidence). As to entrance fees, based on the terms of the 2016 RA, the amount of an entrance fee would not change Sweetwood's refund obligation.

contract." *Spence v. Berkshire Life Ins. Co.*, 561 F. Supp. 2d 126, 130 (D. Mass. 2008). *See*

*Duclersaint v. Fed. Nat'l. Mortg. Ass'n.,* 696 N.E.2d 536, 540 (Mass. 1998). By signing the

2016 RA, Skinner acknowledged that it expressed the parties' complete understanding and that

she was not relying on any promises or representations that were not in the 2016 RA (Dkt. No.

94-8 at 29).[6] Thus, the 2016 RA's unambiguous refund policies controlled notwithstanding any

interpretations Sweetwood's agents might have offered (Dkt. No. 92 at 9-11). *See Siebe, Inc. v.*

*Louis M. Gerson Co.,* 908 N.E.2d 819, 825-26 (Mass. App. Ct. 2009) (extrinsic evidence is not

admissible when a contract is unambiguous).

Skinner's argument that it is unclear whether the term re-occupancy in § 5.1 of the 2016

RA means that the entrance fee refund becomes payable if the unit is rented as well as when it is

sold is contradicted by the plain terms of the agreement (Dkt. No. 92 at 4, 6, 8). Section 5.1

addresses entrance fee adjustments when a resident transfers to a different living unit at

Sweetwood (Dkt. No. 94-8 at 13-14). Section 5.3 controls the refund of that entrance fee when

the resident leaves Sweetwood (Dkt. No. 94-8 at 13-14, 17). Section 5.3.3, entitled "Payments

Pending Re-occupancy," is the only refund provision in § 5.3 that mentions re-occupancy (Dkt.

No. 94-8 at 17-20). That section, in turn, refers to §§ 5.3.2 and 5.3.4 (Dkt. No. 94-8 at 18-19).

Those provisions make it clear that re-occupancy means re-sale to a new resident who signs a life

care contract and pays the entrance fee (Dkt. No. 94-8 at 18, 19). Consequently, it was not

necessary for the 2016 RA to specifically exempt rentals from the refund policies as Skinner

---

[6] Sweetwood's hearsay objection to Skinner's reliance on Drumm Moore's statements is not well
taken. Statements made "by a party's agent or employee on a matter within the scope of their
relationship and while it existed" are admissible as statements of a party-opponent. Fed. R. Evid.
801(d)(2)(D). There is, however, no dispute that Drumm Moore did not guarantee a sale of Unit
221 (PSOF ¶¶ 74, 89, 90, 91; Def. Resp. PSOF ¶¶ 74, 89, 90, 91).

suggests (Dkt. No. 92 at 8-9).  Moreover, Skinner acknowledged that Sweetwood did not agree that a refund would be triggered if Unit 221 was leased (Dkt. No. 88-9 at 171; Dkt. No. 95-1 at 75, 79-80).

As to Skinner's claim that the agreement was unfair "as applied," there are no facts to support her assertion that Sweetwood rentals delayed a refund payment to her (Dkt. No. 92 at 10, 23).  On the record before the court, it is undisputed that the market for life care units dried up after Roland and Delma moved to Sweetwood in 2001 (Dkt. No. 94-4 at 86).  Straus testified that the decline was likely caused by consumers remaining in their homes until they were older and needed more care than a CCRC provided (Dkt. No. 94-4 at 86).  Sweetwood is not to blame for this change in market conditions.  *See Putnam v. DeRosa,* 963 F.2d 480, 488 (1st Cir. 1992) (affirming denial of plaintiffs' recovery under Chapter 93A where their loss was not caused by misrepresentations but was due to the declining condominium market and tax changes contributing to the fall of the market "'for which the defendants [bore] no responsibility.'").

Finally, "[t]he standard for examination of the adequacy of a response to a demand for relief under [Chapter] 93A, § 9(3), is whether, under the circumstances, and in light of the complainant's demands, the offer is reasonable." *Calimlim v. Foreign Car Ctr., Inc.,* 467 N.E.2d 443, 447 (Mass. 1984) (citing *Kohl v. Silver Lake Motors*, 343 N.E.2d 375, 377-78 (Mass. 1976)).  In response to Skinner's Chapter 93A letter, Sweetwood offered – pre-suit – to refund approximately 50% of the cumulative entrance fee Skinner's parents had paid without satisfaction of the conditions set forth in § 5.3.2 of the 2016 RA; refund Skinner 80% of the cumulative entrance fee on the re-sale and re-occupancy of either Unit 119 or Unit 221 if the re-sale and re-occupancy occurred by December 31, 2021; refund Skinner 90% of the cumulative entrance fee on the re-sale and re-occupancy of either Unit 119 or Unit 221 if the re-sale and re-

occupancy occurred after December 31, 2021 but before December 31, 2023; and, if there was no re-sale and re-occupancy of either Unit 119 or Unit 221 by December 31, 2023, to refund Skinner 90% of the cumulative entrance fee in two installments, with payment completed by December 31, 2024 (Dkt. No. 88-15 at 6). Skinner was not entitled to any statutorily mandated refund of the cumulative entrance fees her parents paid because they lived at Sweetwood for almost twenty years. *See* Mass. Gen. Laws ch. 93, § 76(c)(4) ("The entrance fee minus no more than one percent for each month of occupancy shall be refunded to the resident when the resident leaves the facility or dies."). As is set forth above, Skinner was not entitled to a refund under § 5.3.2 of the 2016 RA unless certain clearly stated conditions were satisfied. Those conditions have not been satisfied. Under the circumstances and in light of Skinner's demands, Sweetwood's pre-suit settlement offers were reasonable.

In summary, Skinner's motion for summary judgment as to her Chapter 93A counterclaim is denied and Sweetwood's cross-motion for summary judgment on that counterclaim is granted.

V.    CONCLUSION

For the reasons set forth above, Sweetwood's Motion for Summary Judgment (Dkt. No. 87) is GRANTED and Skinner's Cross-Motion for Summary Judgment (Dkt. No. 90) is DENIED. The Clerk's Office is directed to close the case on the court's docket.

It is so ordered.

Dated: December 3, 2024                                    /s/ Katherine A. Robertson____
                                                          KATHERINE A. ROBERTSON
                                                          United States Magistrate Judge